Booth, Judge,
delivered the opinion of the court:
The plaintiff, Pittsburgh-Des Moines Steel Co., is a co-partnership. On March 27, 1919, plaintiff and defendant •entered into a written contract by the terms of which the plaintiff agreed to construct eight 820-foot steel radio tow *606 ers at the Lafayette Radio Station, Croix d’Hins, Gironde,. France. Paragraph 29 of the specifications (Finding III) contained a provision for the transportation of plaintiff’s, force of employees from New York to Bordeaux and from Bordeaux to New York at Government expense, reciting,, among other things, that 10 days’ notice of readiness to sail would be required. Thirteen employees of the plaintiff were' delayed in securing passage beyond the time stated in the notice given, and during the period of this delay plaintiff paid them their wages, amounting to $957.92. This amount, under this provision, the plaintiff insists he is entitled to' recover. We think not. The plaintiff’s construction of the paragraph would have it read as an agreement to transport the men within 10 days after receiving the notice. The defendant did not assume an obligation of this sort. What is clearly intended by the paragraph is the imposition of an obligation to transport the men free of expense to the plaintiff, but the obligation shall not arise unless 10 days’’ notice of readiness to sail is given the defendant. It is not an undertaking to transport within a limited time, but an obligation to transport free of charge after the requisite notice is given. The record does not show that the delay occurred through any fault on the part of the defendant or that immediate transportation was not furnished when tluv same was available. As a matter of caution the defendant required this notice. Means of transportation were not always at hand, and unless the defendant unreasonably and without just cause delayed their return the defendant’s obligation was observed when the costs of transportation were fully paid.
Paragraph 14 of the specifications (Finding Y) provided for the furnishing by the defendant of electric current for light and power. In the main this obligation was fulfilled. At times and on certain occasions the current intermittently failed, and when it did so the riveters and erectors employed by the plaintiff were temporarily idle. This class of employees were paid, some for straight time and others by the hour. Obviously the hourly wages could have been saved. The electric current was procured by the defendant from outside sources. No plant of its own generated it. It came *607 over the wires at the rate of about 11,500 volts and necessarily had to be transformed before used. The power furnished the plaintiff was 220 volts direct current. A 500-kilowatt General Electric motor generator was installed at the site of the work, and the plaintiff was responsible for its operation and upkeep. The above details we have set forth as clearly disclosing the fact that where under a contract to furnish a necessary supply one party is to do certain things and the other party certain other things, and something intervenes to forestall the continuance of a service dependent upon this joint obligation, it is indispensable for the complaining party to show that he is not at fault and the other party is. This has not been done. It is not sufficient to merely establish the failure of the current at certain periods and leave the court to infer that the defendant had failed to meet its contract in this respect. So far as this record goes, the delay occasioned the contractor may have been unavoidable, and responsibilities for unavoidable delays were not assumed.
The last item of the suit is, indeed,'most singular. Why the contractor was not paid as the contract provides, and if not so paid, made whole according to the stipulations respecting payment, it is difficult to say. Paragraph 6 of the contract (Finding VI), reciting the consideration for the undertaking, says in reference thereto, “ shall be paid * * * the sum of two hundred and forty-eight thousand eight hundred dollars ($248,800.00).” By what process of reasoning the meaning, scope, and obligation clearly imposed by. this provision could be perverted and ignored presents a problem of no easy solution. Notwithstanding this plain and decidedly unambiguous clause, the officers of the defendant sought to discharge the obligation at a rate of exchange disproportionate to the current and commercial rates prevailing at the time payments were made. Not only that, but they insisted, over the protest of the contractor, in paying the same in francs, when he obviously had a right to demand and receive American dollars. Finally, after- protest and complaint, the clause was observed as worded and the plaintiff was paid the remaining payments in dollars, but not until after the fluctuating changes in the rate of ex *608 change had caused this plaintiff a loss of $7,334.70. The defendant labors to justify the course pursued, and being unable to sustain the contention upon any of the stipulations of the contract, resort is had to extraneous rules and regulations adopted by the Treasury Department for the payment of our military forces abroad. It is, indeed, a novel contention. We are not impressed with an assertion that contractual obligations may be disposed of by rules and regulations of a department in the absence of any stipulation in the agreement to that effect. The contract provided that the contractor was to receive as payment for his undertaking so many dollars, and the payment of any less sum would not, and could not, by any lawful means, discharge the obligation or relieve the liability.
Judgment will be awarded the plaintiff in the sum of $7,334.70. It is so ordered.
Geaham, Judge; Hat, Judge; Downey, Judge; and Campbell, GMef Justice, concur.